We'll begin with Sosa v. New York City Board of Education. Okay, good afternoon, your honors. This is Stephen Bergstein representing the plaintiff appellant Alice Sosa. We have three primary issues on appeal. She's alleging the denial of reasonable accommodations under federal disability law, retaliation in violation of Family Medical Leave Act, and a hostile work environment on account of disability and race. Let me start with the reasonable accommodation under federal law. On two occasions in late 2012, after the plaintiff had a series of surgeries for both hernia and breast cancer, the principal Markovich denied plaintiff's request to transfer a violent student out of her class. Plaintiff didn't feel safe in light of her recent physical surgeries. And then the following month, October 2012, Markovich transferred an aggressive student into plaintiff's class. Let me ask you, the cancer was certainly a qualifying disability, but how was the cancer in any way related to the accommodation? The hernia might have been in terms of lifting and what she said or dealing with this student, but is a hernia sufficient to be a disability under REACT? Yes, and the hernia is a disability under Colwell v. Suffolk. Sitting and lifting are major life activities and the hernia would affect her ability to do those things. So you're correct, the reasonable accommodation denials in late 2012 primarily deal with the hernia and on, again, two students in her class that plaintiff didn't feel comfortable. Let me ask you this, the hernias, wasn't that resolved by the surgery? Well, the question I guess is whether she then had a disability at the time of this episode. I would say yes, under the Americans with Disabilities Act, she had a record of such an impairment under 12-1021. So even if the cancer had subsided momentarily because of the surgery, she had a record of such impairments, same would hold true with the hernia. I thought that with respect to the concept of having a record of an impairment, it's somewhat discriminating against you because you were previously disabled. I'm not sure how that fits into your theory that a reasonable accommodation was necessary. Because they knew she had had surgery that year, so she was in a fragile state. Just because she had the surgery doesn't mean she's doing better. So I'm trying to get it straight. Are you saying that this is because of a fear of the injury she had that is the condition she was in after the surgery, or whether this was a fear of re-injury of a different sort? Because I'm not sure whether the condition after the surgery qualified, and I'm not sure that a fear of re-injury in itself without more qualified. So I'd like to know which of the two, or if you're arguing both. I think it's both because she had a record of this impairment. She had a surgery. She was still fragile. She was concerned about what an aggressive student might have on her physical condition having undergone the surgery. So she was still in a precarious state. So for that reason, she requested this accommodation. You know, I'm a special ed teacher. I can't have these students in my classroom if they have a history of violence. A fear of re-injury relates to that because she had just had the surgery. I think it's understandable why she would make that request. Well, I think it's understandable why she would make the request. The question is, does that qualify under the statute, which is not, you know, there are any number of requests which are understandable, but which don't give rise to a claim under the statute. That's what I've got to try to figure out. I understand the question, but if she had a record of such impairment and she knew she had the I'm not sure how I can answer it any better than that. You know, it certainly related to her disability and it related to her physical condition, which was the hernia. And then it sort of came back in March the following year when the second student, she had tackled the second student and she got injured again and she needed emergency hernia surgery because of that episode. So throughout this process, it just looks to me like this was a disability-related request covered under the statute. And the district court ruled against us because she was afraid of future injury, citing the code of federal regulations, but that provision 1630.2H really doesn't cover that. It talks about a current disability. I don't see language about fear of re-injuring oneself or fear of a recurrence preventing somebody from seeking protection under the act. So that language that the district court used, I don't see that anywhere else. So just looking at this from the standpoint of her preexisting injuries, it looks to me like this was a request relating to a protected disability under the ADA. You have a minute left. You said three minutes for rebuttal. Let me briefly discuss the Family Medical Leave Act. In January 2012, a plaintiff told the principal's office assistant that she planned to take FMLA leave because she was having exploratory surgery. The plaintiff writes in her affidavit that during this period, she was in touch with the administrative assistant advising as to her progress, making it clear that she was going to comply with FMLA rules in terms of the paperwork. But two days later, she was issued an AWOL letter threatening with possible termination, even though the principal, Berger, who sent that letter, knew that plaintiff was in the process of complying with her obligations under the in-house FMLA rules. So the jury may find that plaintiff was not AWOL and that the threat of losing her position would be enough to dissuade a reasonable employee of invoking Family Medical Leave Act in the future. I would point out that there is a disparate treatment component to this for purposes of showing unlawful retaliation because the record shows at page 2305 that a comparable employee had FMLA leave, didn't complete the paperwork, was absent for eight or more days. She got a warning letter, too, but there was no threat of termination. All right. Thank you. We'll move on. Thank you. The district court correctly granted summary judgment on each of the three federal claims that Ms. Sosa seeks to revive here because in each instance, she failed to establish an evidentiary basis for a key element of her claim. With regards to the failure to accommodate claim, Ms. Sosa did not have a hernia at the time that she allegedly made her request. What she had was a cancer diagnosis that certainly qualifies as a disability and a history of hernias. But her request to have a student moved from the room... Was she still at a point where there was a vulnerability to injury if she did heavy lifting, for example? She had had four surgeries, as I understand it, or even more. Did she have a limitation on a major life activity that is the ability to lift? Well, Your Honor, there's no evidence whatsoever in the record about a fragile condition or a weak condition that Ms. Sosa was in at the time of her request. She always centered the request and the reason for the request on a fear of reinjury and nothing else. But the fear of reinjury is because she's in a fragile condition because she had gone through four surgeries. I understand that to be the theory. Yes, Your Honor. But the most immediate surgery had been in February of 2012, I believe. For a hernia. And this request was made in September 2012. And again, there is no documentation or even allegation in the complaint or elsewhere that she was in a weakened condition. Indeed, the complaint says at page 19 of the record that at all times she was able to perform the essential functions of her job. And so the reason that she gave for the request was a fear of reinjury, which is not causally connected to any disability under the meaning of the ADA. Certainly, it may be the case that a number of employees who've had a medical event may fear reinjury in a number of circumstances. Is there a causal connection? Because the fear of reinjury is related to the treatment of the hernias and arguably the cancer, too. She had a mastectomy. Yes, Your Honor. She had several surgeries relating to the cancer as well. But you say that she said that she could do her job. Is part of the job lifting difficult students? Well, Your Honor, Ms. Sosa was a special education teacher at a District 75 school. The record evidence is that a majority of the students were aggressive or violent at times. Every student in that school was on the autism spectrum. And so, yes, Your Honor, I think occasionally restraining a student, these were elementary school students, but occasionally the District Court didn't reach that issue because it held as a threshold matter that there was no connection between the request and a disability. And Your Honor, to the extent that there's a relationship between her fear of reinjury and her disability, that still doesn't make a causal connection. In our brief, we cited to Felix where this court held that a fear of reinjury stemming from a disability was not itself a disability. It didn't impair a major life activity. And a non-disability impairment, even if related to the disability, doesn't necessarily create a causal connection. The same is true here. Based on the record evidence, the fear of reinjury was speculative. Not to say that it was unreasonable, but it was speculative. It wasn't tied to any current condition that she had at the time that she made her request. And that was not her allegation, nor is there record evidence to support that she was in a condition, in a weak condition, a fragile condition at the time that she made her request. This is Judge Winters. Could you tell me what the record shows about how long it was after the hernia surgery that she made this request? Your Honor, I believe that she was on leave between January and September of 2012, during which time she had hernia surgery in February of 2012. And then she returned to work in September of that year and made the request. And to the best of my knowledge, the request was quite a few months after her hernia surgery in February. But it was immediately after she went back to work. That's right. It would have been, yeah, correct. Thank you. Your Honor, unless there are any further questions on this point, I'll turn to the retaliation claim. As to the letter, sorry, please go ahead. No, I was saying go ahead. As to the letter, it did not result in any adverse consequences, nor would it dissuade any employee from taking a similar leave, provided they were willing to comply with a basic requirement of providing medical documentation. It's undisputed here that Ms. Sosa failed to respond to three receipts of documentation before she was sent the letter. And there simply was no adverse consequence that attached once she provided the documentation. She was able to take a similar leave, and indeed she did. And it was explained to her that the reason she was being contacted was because she had no other leave, and the school was trying to avoid an interruption in her health insurance. As to her transfer to the school's main site, again, there was no negative consequence or adverse employment consequence attached to that. Ms. Sosa maintained her salary, her benefits, her seniority, and her preferred teaching assignment. There's nothing in the record showing that she was denied anything that she wanted except for her preferred location. And it was completely unconnected to her FMLA leave. It happened months after the leave, and there was an intervening serious disciplinary incident with a paraprofessional where the police were called. So, the move, as the principal testified, allowed her to teach her preferred class but remove her from that environment. And finally, with regard to the hostile work environment claim, the majority of the allegations regarding a hostile work environment have no connection to any protected characteristic, including the assistant principal ignoring or being rude to Ms. Sosa on several occasions, the principal calling her stupid following the police incident, a non-party teacher referring to her as a difficult type of person. Similarly, the challenged personnel decisions don't relate to race or disability. Another teacher was chosen to attend a workshop. And other comments were such as a comment that one teacher made that some Black people eat with their hands, with the undisputed context being that they were problem shooting about a student who was resistant to using cutlery. So, even taken all together, and these were sporadic, unconnected comments over a long period of time, even all taken together, they simply don't create a pervasive atmosphere of abuse or hostility that's required for a hostile work environment claim. Unless the court has any other questions, I'll rest on my brief. Thank you. Mr. Bergstein, we'll hear your rebuttal. Okay. Let me go through the three arguments in order. In the plaintiff's affidavit, she does bring the bilateral mastectomy into the equation with respect to the reasonable accommodation request. She had that surgery also in 2012. That's page 2344 and 45 of the record, which includes her sworn affidavit. The Finla retaliation, we just heard that plaintiff ignored requests to comply with administrative obligations. That's not really true in her affidavit. She said she was in touch with the administrative assistant and kept her apprised of her progress. That's page 2343 of the record, paragraph 11. The argument I just heard was that she didn't provide medical records when asked three times. She told them she would provide the proper paperwork when she got her doctor's certification. That's in her affidavit. That's page 2343. Then the question is, if somebody has said that, and what you get is this letter, which suggests what might happen if you don't, whether that would chill anybody from making the claim. That seems to me kind of stretching, given this letter didn't actually threaten completely. It just said, these are things you do, and if you don't, you'll be in trouble. It's not you're going to be fired, quite that dramatically, is it? Well, it did say you would be in jeopardy of losing your position. If you don't do what we've asked you to do, and which you said you couldn't yet do. Well, it's jarring. I think it's jarring for an employee to get a letter like this. You could be fired because you're not complying with rules that a jury-confined plaintiff was complying with. What's going on here? This is part of a pattern of abuse and harassment that's been going on for quite some time with the same principle. That factual allegation is also part of a longstanding hostile work environment, but they didn't always threaten people with losing their position. As I mentioned a few minutes ago, somebody else in a similar situation was not threatened with termination. Somebody who works for a living, who needs the salary, who's got benefits being threatened with termination. I would think it's pretty jarring to be issued a letter like this. One minute, one minute. Okay. On the hostile work environment, very quickly, we have a series of racial comments. We have a series of disability-related comments. We also have a long series of facially neutral adverse personnel actions, which the district court summarized for us in the opinion at footnote 9 on special appendix 18. Now, those examples, none of them explicitly reference race or disability, but this court has said many times that facially neutral adverse personnel decisions can support a hostile work environment claim if you can connect those adverse decisions with disability or race or gender. We have here adverse decisions made by Berger and Markovich, the same people who had made hostile comments toward the plaintiff based on her race and based on her disability. Under the totality of the circumstances, under summary judgment record, a jury could find that over a two-year period or so, there was a series of otherwise inexplicable events demonstrating hostility toward plaintiff and her numerous medical leave requests and surgeries and being out of work and then coming back. It just looks like a concerted effort to demonstrate unhappiness with the plaintiff's medical conditions, her frequent absences, that can support a hostile work environment claim. All right. Thank you. The court will reserve decision.